UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| THE BULL BAG, LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION NO. |
| v. | : | 3:16-CV-1735 (VLB) |
| | : | |
| REMORQUES SAVAGE, INC., | : | August 30, 2017 |
| | : | |
| Defendant. | : | |

**MEMORANDUM OF DECISION GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION TO DISMISS [DKT. NO. 16]**

I. **Introduction**

Plaintiff The Bull Bag, LLC brings this action for breach of contract,
violations of the Connecticut Uniform Trade Secrets Act ("CUTSA"), Conn. Gen.
Stat. § 35-50, violations of the Connecticut Unfair Trade Practices Act ("CUTPA"),
Conn. Gen. Stat. § 42-110a et seq., and for negligent misrepresentation. For the
reasons that follow, the Defendant's Motion to Dismiss [Dkt. No. 16] is GRANTED
IN PART and DENIED IN PART.

II. **Background**

Unless otherwise noted, the facts in this section are taken from the
Plaintiff's complaint. The Plaintiff is a limited liability company, doing business in
Killingsworth, Connecticut and authorized to do business in Connecticut.
[Compl. ¶ 1]. The Defendant is a Canadian corporation doing business in
Sherbrooke, Quebec, Canada. [Compl. ¶ 2].

In May 2015, the parties began exchanging emails about Defendant's
potential construction of a trailer custom-built to Plaintiff's design specifications.

1

[Compl. ¶ 5].  In August 2015, the parties reached an agreement via email, in which the Defendant agreed to construct this trailer and deliver that trailer to Connecticut for use in Connecticut.  [Compl. ¶¶ 3-4].  This agreement took the form of a purchase order dated August 17, 2015 for production of a prototype. [Compl. ¶ 7].  The purchase order does not specify who would design the trailers or who would own any intellectual property rights to the trailer's design.  [Dkt. No. 16-4].  The Plaintiff began feeling dissatisfied with production delays in November 2015.  [Compl. ¶ 9].

The parties had a breakdown in their working relationship, which led to the termination of this relationship on or about December 2, 2015.  [Compl. ¶ 10]. This breakdown was precipitated not only by delays, but by Plaintiff's belief that the Defendant misrepresented that it would keep the Plaintiff's design specifications confidential and would use the design solely to build products for the Plaintiff.  [Compl. ¶ 26].  The Defendant submitted copies of December 1, 2015 emails memorializing the breakdown.

- The first communication in the email chain filed with the Court, from Plaintiff's Chief Executive Officer Paul G. DiSpazio, states, "Please inform me if you [would] like to move forward with the agreement, without the requested requirement[]s we cannot continue our relationship."  [Dkt. No. 16-7 at 2].  (The referenced agreement and requested requirements were not submitted with the Defendant's exhibits.)

- An unnamed representative of the Defendant replied, "My plans are not to be used by [an]other manufacturer.  Confirm [to] me that and [sign an] NDA agreement [and] you'll get [the] plans."  [Dkt. No. 16-7 at 3].

- DiSpazio replied, "The engineering cost was part of your quote for the trailer, we have the prototype specifications we sent to your many months back.  If you cannot supply us with trailers based on

our schedule we have the right to go elsewhere.  I will not budge or negotiate on this [any] longer, I need to move forward today with our crane supplier."  [Dkt. No. 16-7 at 3].

- Defendant's Sales Director Martin Bouchard replied that the Defendant had consulted an attorney who advised it that the Defendant held the intellectual property rights to the trailer's design, and that they could grant the Plaintiff these rights "but not for free and not because you told[] us the measurements of the trailers." [Dkt. No. 16-7 at 4].  The email further stated that "you signed an order and you committed yourself by email and over the phone.  So I will deliver the trailer to you next week."  [Dkt. No. 16-7 at 4].

- DiSpazio replied, "I'm sorry this is not what was discussed, we will not be accepting the trailer and ceasing our relationship with you." [Dkt. No. 16-7 at 5].

Defendant produced the prototype in late November 2015, but did not deliver it to the Plaintiff.  [Compl. ¶ 8].

Plaintiff claims that the Defendant threatened to sell the prototype to a third party if the Plaintiff did not pay for the prototype.  [Compl. ¶ 13].  Plaintiff also alleges upon information and belief that the Defendant is improperly using elements of the prototype's design for other customers' products.  [Compl. ¶ 15].

On November 25, 2016, Plaintiff served a summons with a copy of the civil cover sheet and complaint on the Defendant, but did not include with these documents copies of the Court's Order re: Chambers Practices [Dkt. No. 5], the Electronic Filing Order [Dkt. No. 3], the Order on Pretrial Deadlines [Dkt. No. 2], or the Protective Order [Dkt. No. 4], as required by the Court's October 19, 2017 Notice to Counsel/Pro Se Parties [Dkt. No. 6].

The Defendant has moved to dismiss this case for lack of personal jurisdiction, insufficient process, and for failure to state a claim for which relief may be granted.

### III.  Lack of Personal Jurisdiction

#### A.  Standard of Review

A civil action should be dismissed if the Court lacks personal jurisdiction over a party.  *See* Fed. R. Civ. P. 12(b)(2).  "When responding to a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant."  *Am. Wholesalers Underwriting, Ltd. v. Am. Wholesale Ins. Grp., Inc.*, 312 F. Supp. 2d 247, 251 (D. Conn. 2004) (citing *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994)).  Prior to discovery, a plaintiff may defeat a motion to dismiss based on legally sufficient allegations of jurisdiction and by making a *prima facie* case of jurisdiction.  *Id.*  (citing *Ball v. Metallurgie Hoboken–Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)).  "When considering a Rule 12(b)(2) motion, the court construes any factual averments and resolves all doubts in the plaintiff's favor."  *Am. Wholesalers Underwriting*, 312 F. Supp. 2d at 251 (citing *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986)).

#### B.  Analysis

"In diversity cases, federal courts must look to the forum state's long-arm statute to determine if personal jurisdiction may be obtained over a nonresident defendant."  *Savin v. Ranier*, 898 F.2d 304, 306 (2d Cir. 1990).  To establish a prima facie case of personal jurisdiction, a plaintiff must (1) allege facts sufficient to show that the forum state's long-arm statute reaches a defendant; and (2) establish that the court's exercise of jurisdiction will not violate due process.

*Chirag v. MT Marida Marguerite Schiffarhrts*, 933 F. Supp. 2d 349, 352 (D. Conn. 2013), *aff'd*, 604 F. App'x 16 (2d Cir. 2015).

### 1. Connecticut Long-Arm Jurisdiction

Connecticut's long-arm statute provides:

Every foreign corporation shall be subject to suit in this state, by a resident of this state or by a person having a usual place of business in this state, whether or not such foreign corporation is transacting or has transacted business in this state and whether or not it is engaged exclusively in interstate or foreign commerce, on any cause of action arising as follows:

(1) Out of any contract made in this state or to be performed in this state;

(2) out of any business solicited in this state by mail or otherwise if the corporation has repeatedly so solicited business, whether the orders or offers relating thereto were accepted within or without the state;

(3) out of the production, manufacture or distribution of goods by such corporation with the reasonable expectation that such goods are to be used or consumed in this state *and are so used* or consumed, regardless of how or where the goods were produced, manufactured, marketed or sold or whether or not through the medium of independent contractors or dealers; or

(4) out of tortious conduct in this state, whether arising out of repeated activity or single acts, and whether arising out of misfeasance or nonfeasance.

Conn. Gen. Stat. § 33-929(f).  Plaintiff asserts that the Court may exercise jurisdiction pursuant to the first and fourth factors, asserting that the contract to build the prototype was made in Connecticut and that Defendant committed tortious conduct in Connecticut.

Under section 33-929(f)(1), a contract is made "'when and where the last thing is done which is necessary to create an effective agreement.'"  *H. Lewis Packaging, LLC v. Spectrum Plastics, Inc.*, 296 F. Supp. 2d 234, 239 (D. Conn. 2003) (quoting *Chemical Trading, Inc. v. Manufacture de Produits Chimiques de*

*Tournan*, 870 F. Supp. 21, 24 (D. Conn. 1994)).  Plaintiff argues that because Paul DiSpazio was located in Connecticut when he electronically signed the purchase order, the contract was made in Connecticut.  [Pl. Opp. at 3].  Defendant does not contest that the Plaintiff's electronic signature was the last action necessary to finalize their agreement, but counters that section 33-929(f)(1) was intended to apply only to contracts signed in person, rather than virtually, noting that the Plaintiff cited cases involving contracts "physically" signed in Connecticut.  [Def. Reply at 2].

The Defendant has not offered any precedent which suggests that the acceptance of a contract in Connecticut does not give rise to long-arm jurisdiction where the contract is negotiated and signed electronically or transmitted via email.  In fact, the District of Connecticut has held that section 33-929(f)(1) is satisfied where negotiations between parties in different states are conducted over the telephone or via email, and acceptance is accomplished electronically by telephone or fax.  *See, e.g., Vanco Trading, Inc. v. Odfjell Terminals (Houston) LP*, No. 3:09CV219 AWT, 2010 WL 965789, at *1, *3 (D. Conn. Mar. 15, 2010); *H. Lewis Packaging*, 296 F. Supp. 2d at 238-39.  By attempting to contrast an electronic signature and emails with telephone calls and faxes, the Defendant at best identifies a distinction without a difference.  The Court therefore finds that the Plaintiff has shown that the Defendant is subject to long-arm jurisdiction in Connecticut, and must consider whether the Court's exercise of personal jurisdiction is consistent with due process.

### 2. Due Process

"The constitutional analysis under the Due Process Clause consists of two separate components:  the 'minimum contacts' inquiry and the 'reasonableness' inquiry."  *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 60 (2d Cir. 2012).

### a. Minimum Contacts

The "minimum contacts" inquiry requires the Court to consider whether the Defendant has "purposefully avail[ed] itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws."  *See Vertrue v. Meshkin*, 429 F. Supp. 2d 479, 495 (D. Conn. 2006) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).  "A commercial actor need not have a physical presence in a state to establish the necessary minimum contacts, so long as the actor's efforts are directed at the forum state."  *Chirag*, 933 F. Supp. 2d at 354.  However, a defendant's conduct and contacts with the forum state must be such that the defendant "should reasonably anticipate being haled into court there."  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).  Courts must consider a totality of the circumstances to determine whether a defendant's contacts with the forum state justify the exercise of personal jurisdiction.  *Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 166 (2d Cir. 2005).

While the Defendant correctly states that a single sale of a product in a state is often insufficient to establish minimum contacts, the single sale at issue in this case is distinguishable from those at issue in the cases the Defendant

cites.  For example, *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873, 882-83, 886 (2011), discusses the placement of a single product into a "stream of commerce," wherein a manufacturer is sued in a state because a third-party distributor sold a product in that state.  This is not the situation now confronting the Court.  Here, the Defendant negotiated a contract with a Connecticut company through a series of telephone calls and emails with company representatives located in Connecticut, and custom-built a prototype that took several months to complete, was worth over $18,000, and was to be delivered to Connecticut.  These contacts cannot be considered so "random, fortuitous, or attenuated" that the exercise of jurisdiction would be improper.  *Rudzewicz*, 471 U.S. at 475.  Rather, by engaging in the business transaction at issue here, the Defendant reached out beyond Canada to create a continuing relationship with and obligations to a Connecticut company.  The Defendant must therefore be "subject to regulation and sanctions in [Connecticut] for the consequences of [its] activities," *id.* at 473.

### b.  Reasonableness

The "reasonableness" inquiry requires the Court to decide "whether the assertion of personal jurisdiction comports with traditional notions of fair play and substantial justice—that is, whether it is reasonable to exercise personal jurisdiction under the circumstances of the particular case." *Licci*, 673 F.3d at 60 (quotations omitted).  The Supreme Court has held that courts must evaluate the following factors as part of this analysis:  "(1) the burden that the exercise of jurisdiction will impose on the defendant[s]; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff[s'] interest in obtaining convenient and

effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies." *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996) (citing *Asahi Metal Indus. Co., Ltd. v. Superior Court*, 480 U.S. 102, 113-14 (1987)).

The Court considers each of these factors in turn. First, the burden for the Defendant of litigating in Connecticut is high, because Defendant is a resident of and operates solely in the Canadian province of Quebec. Second, Connecticut courts have a strong interest in adjudicating cases which concern Connecticut companies, and which implicate Connecticut statutory and common law causes of action. Connecticut has a substantial interest in the viability of business entities resident in the state and in the preservation of their exclusive proprietary rights. Third, the Plaintiff's home state of Connecticut is the most convenient forum for it to seek relief, as evidenced by its decision to file suit in Connecticut and its choice of Connecticut counsel. Fourth, the judicial system's interest in obtaining the most efficient resolution of the controversy also favors Connecticut because the case is here, this Court is familiar with the case, both parties have counsel of their choice here, many of the events at issue occurred here, and critical witnesses are here, in particular Bull Bag employees who allegedly developed design specifications for the trailer, and who will likely be called to testify. The last factor favors neither Connecticut nor Quebec. Both share an interest in affording their residents a neutral forum in which to resolve contract disputes, and in both locations have the parties suffered as a result of the

breakdown of their deal.  As only one of the five factors favors Quebec, three favor Connecticut, and one factor is neutral, the exercise of personal jurisdiction in Connecticut is reasonable.

Because Plaintiffs have established that the requirements of Connecticut's long-arm statute have been met, and because the exercise of jurisdiction is consistent with due process, Defendant's motion to dismiss pursuant to Rule 12(b)(1) is DENIED.

## IV.     <u>Insufficient Process</u>

Rule 4 of the Federal Rules of Civil Procedure states that "[a] summons must be served with a copy of the complaint," Fed. R. Civ. P. 4(c)(1), and the summons must "(A) name the court and the parties; (B) be directed to the defendant; (C) state the name and address of the plaintiff's attorney . . . (D) state the time within which the defendant must appear and defend; (E) notify the defendant that a failure to appear and defend will result in a default judgment against the defendant for the relief demanded in the complaint; (F) be signed by the clerk; and (G) bear the Court's seal."  Fed. R. Civ. P. 4(a)(1).  If the summons lacks any of these requirements or is not served with a copy of the complaint, a defendant may move to dismiss the case pursuant to Rule 12(b)(4) of the Federal Rules of Civil Procedure.

The Defendant claims that process was insufficient because the Plaintiff failed to comply with the Court's October 19, 2016 Notice to Counsel/Pro Se Parties [Dkt. No 6], by neglecting to serve documents relating to the case schedule and Chambers practices.  While the Plaintiff's failure to serve these

documents is serious because it represents a failure to comply with an order of this Court, it is not grounds for dismissal pursuant to Rule 12(b)(4), because the Federal Rules of Civil Procedure do not require that these documents be served.

Further, the documents Plaintiff failed to serve were filed on the case docket by the Clerk of the Court on the date the complaint was filed and two months prior to the Defendant's appearance.  Therefore the failure to serve these documents was a technical deviation which did not prejudice the Plaintiff.  A benign defect of this nature is insufficient to deprive a litigant of access to the court.  *See, Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988); *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993) (noting the Second Circuit's "oft-stated preference for resolving disputes on the merits").

Because the Plaintiff served on the Defendant a summons that complies with Rule 4(a)(1) along with a copy of the complaint and the procedural defect did not prejudice the Defendant, the Defendant's motion to dismiss for insufficient process is DENIED.

V.  Failure to State a Claim

    A.  Standard of Review

Rule 12(b)(6) permits a defendant to move to dismiss a complaint that "fails to state a claim upon which relief may be granted."  Fed. R. Civ. P. 12(b)(6).  "'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Sarmiento v. United States*, 678 F.3d 147, 152 (2d Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  While Rule 8 does not require detailed factual

allegations, "[a] pleading that offers labels and conclusions or formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (quotations and citations omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 557 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citations omitted).

In considering a motion to dismiss for failure to state a claim, the Court should follow a "two-pronged approach" to evaluate the sufficiency of the complaint. *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010). "A court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). "At the second step, a court should determine whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" *Id.* "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quotations omitted).

In general, the Court's review on a motion to dismiss pursuant to Rule 12(b)(6) "is limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any

documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). The Court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005). Here, Defendants attach copies of emails negotiating the terms of sale, the purchase order for the trailer, and emails memorializing the breakdown of the parties' relationship. These documents are integral to the Complaint and may be considered by the Court.

B. Analysis

The Plaintiff brings claims for breach of contract, violation of CUTSA and CUTPA, and negligent misrepresentation. Each of these claims arise out of the Plaintiff's allegation that the Defendant failed to produce and deliver the prototype within a reasonable period of time, and that the Defendant improperly retained specifications for the prototype.

1. Breach of Contract

The purchase order and accompanying emails do not evidence any agreement about the choice of law applicable to the terms of the sale. The Court must therefore determine whether the parties' contract is government by Connecticut or Quebec law. As this Court's jurisdiction is based on diversity of the parties, Connecticut's choice-of-law rules apply. *See Liberty Synergistics Inc. v. Microflo Ltd.*, 718 F.3d 138, 153 (2d Cir. 2013) ("[A] federal court exercising

diversity jurisdiction must apply the choice-of-law rules of the state in which that court sits to determine the rules of decision that would apply if the suit were brought in state court.").  When parties have not effectively selected an applicable law, Connecticut courts apply the "most significant relationship" test to determine which law should apply, weighing factors such as "(a) the place of contracting, which is the place where occurred the last act necessary to give the contract binding effect; (b) the place of negotiation of the contract; (c) the place of performance; (d) the location of the subject matter of the contract; and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties."  *MM Global Servs., Inc. v. Dow Chem. Co.*, 283 F. Supp. 2d 689, 699 (D. Conn. 2003) (citing *Reichhold Chems., Inc. v. Hartford Accident and Indem. Co.*, 243 Conn. 401, 409-10 (1997)).

The "last act necessary to give the contract binding effect" occurred in Connecticut, with the Plaintiff's e-signing of the purchase order.  Negotiation, performance, and places of business are roughly split between Connecticut and Quebec.  The intended location of the subject matter of the contract is Connecticut.  Although the prototype was never delivered, this factor weighs in favor of Connecticut, tipping the balance of factors in favor of Connecticut.  Further, neither party argues that the Court should interpret the contract using Canadian or Quebec law.[1]  The Court therefore applies Connecticut law.

---

[1] Despite arguing that Connecticut law governs the parties' agreement, Plaintiff cites a Canadian statute governing work for hire, which seems to state that the Plaintiff owns the intellectual property rights in the prototype's specifications. [*See* Dkt. No. 24 at 14-15].  However, a Canadian statute allocating intellectual property rights over work made in the course of employment, does not create a

### a.  Timeliness

Plaintiff argues that the Defendant breached their contract because the Defendant failed to deliver the prototype within a reasonable period of time. Defendant counters that because the parties did not agree to a production or delivery schedule, it could not have breached this agreement.  Indeed, the Complaint is silent as to whether the parties reached any agreement regarding the time by which the prototype should have been delivered.  The purchase order is similarly silent, except that it lists a "ship date" of July 10, 2015, which is more than a month before the Plaintiff signed the final purchase order, and therefore cannot have been the expected delivery date.  While the Plaintiff does state in a December 1, 2015 email, "I will not budge or negotiate on this [any] longer, I need to move forward today with our crane supplier," [Dkt. No 16-7 at 2], he does not state that the parties had agreed the trailer should be completed on any particular schedule.

However, where the parties do not agree upon a time for shipment or delivery, Connecticut's Uniform Commercial Code provides that the "time for shipment or delivery . . . shall be a reasonable time."  Conn. Gen. Stat. § 42(a)-2-309.  The Complaint and accompanying documents show that the purchase order was finalized on August 15, 2015 and the prototype was completed sometime near the end of November, 2015.  The Defendant has offered no legal precedent showing that three months represents a reasonable delay for transactions of the

cause of action sounding in contract.  The Defendant correctly notes, "If the Plaintiff believes that [the Defendant] was not in compliance with the work for hire statute, its remedy is a claim under that law, not a breach of contract claim." [Dkt. No. 27 at 8].

type at issue in this case.  Indeed, whether this three-month delay was reasonable is a question of fact that would require consideration of standard industry practices, and it is therefore ill-suited to disposition on a motion to dismiss. Accepting as true Plaintiff's allegation that the three-month delay was unreasonable, the Complaint states a claim that Defendant breached the implied time limit set forth in Connecticut's Uniform Commercial Code.

In addition to alleging that a valid contract existed, and that an implied term of that contract was breached, Plaintiff further alleges it was harmed. Specifically, Plaintiff alleges that it "would have procured alternative production avenues for its well-developed specifications if the Plaintiff knew that production would be significantly delayed."  [Compl. ¶ 39].  Plaintiff also alleges that "Defendant's failure to perform in a timely manner harmed Plaintiff."  [Compl. ¶ 40].  Finally, Plaintiff's email to Defendant suggests that Defendant's failure to deliver the prototype timely had an adverse effect on the Plaintiff's prospects. Plaintiff has thereby sufficiently alleged that it suffered damages under the notice pleading standard.

The Court notes that the Defendant's ultimate failure to deliver the prototype does not constitute a breach of contract.  The Plaintiff repudiated the contract when it told the Defendant by email that it "[would] not be accepting the trailer and ceasing our relationship with you."  [Dkt. No. 16-7 at 4].  The Defendant cannot be held liable for failing to deliver a product that it knew would not be accepted—indeed, by keeping the prototype in Quebec, the Defendant saved

itself the cost of transporting the prototype, mitigating its own damages from Plaintiff's refusal to accept delivery of the prototype or to pay for it.

### b. Ownership of the Specifications

Plaintiff claims that the Defendant breached the parties' agreement by retaining copies of the prototype's specifications. The Complaint alleges Defendant agreed "to construct a trailer based on the design and other intellectual property of the Plaintiff." [Compl. ¶ 4]. Defendant argues that because the Plaintiff has not pointed to a specific contractual provision dealing with the ownership of intellectual property, Plaintiff cannot allege that the retention of the specifications was a breach of contract. [Def. Br. at 12]. However, the liberal pleading standard does not require such specificity. *See Empower Health LLC v. Providence Health Sols. LLC*, No. 3:10-cv-1163 JCH, 2011 WL 2194071, at *2 (D. Conn. June 3, 2011) ("The plausibility standard does not require a complaint to include specific evidence or factual allegations in addition to those required by Rule 8." (quotations omitted)). The Court cannot conclude from the pleadings that the purchase order and emails comprised the whole of the parties' agreement absent further factual development. Accepting the allegations as true, Plaintiff has stated a claim for breach of contract with respect to the ownership of the specifications. Defendant's motion to dismiss Count One of the Complaint is therefore DENIED.

### 2. Violation of CUTSA

Section 35-51 of the Connecticut General Statutes provides that misappropriation includes "disclosure or use of a trade secret of another without

express or implied consent by a person who . . . at the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was . . . acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use."  Conn. Gen. Stat. § 35-1(b)(2)(B)(ii).  Accepting as true the Plaintiff's allegations that the specification contains trade secrets, and that these trade secrets belong to the Plaintiff, the Court must determine whether the Plaintiff has sufficiently alleged that the Defendant disclosed or used the intellectual property contained within the specification.  The "use" of a trade secret includes "any exploitation of the trade secret that is likely to result in injury to the trade secret owner or enrichment to the defendant."  *On-Line Technologies, Inc. v. Perkin-Elmer Corp.*, 253 F. Supp. 2d 313, 324 (D. Conn. 2003) (quoting Restatement (Third) Unfair Competition § 40 cmt. c).  Plaintiff alleges that the Defendant misappropriated its trade secrets by (1) refusing to return the specifications, and (2) threatening to sell the prototype to a third party.  The Plaintiff further alleges that it has asked the Defendant to return the specification because the Plaintiff believes the Defendant hopes to use the specification to produce trailers for third parties.  The Court must therefore determine whether the retention of the specifications is likely to result in the Plaintiff's injury or the Defendant's enrichment.

CUTSA expressly provides that "threatened misappropriation may be enjoined" and that "affirmative acts to protect a trade secret may be compelled by court order."  Conn. Gen. Stat. § 35-52.  The threat to sell the prototype to a third party or the threat to use the specification to produce trailers for third parties

constitute threatened misappropriation under the statute.  Additionally, by the plain language of the statute, it is within the Court's power to order the specification's return, even if the Defendant has not yet misappropriated the trade secrets contained within it.  The Plaintiff has therefore stated a claim for injunctive relief for the return of the specification, to prevent the sale of the prototype, and to prevent the production of future products using the specification.

Plaintiff has alleged that it has reason to suspect that Defendant enriched itself through the use of the prototype or specifications.  The complaint alleges that Defendant threatening to sell the trailer to a non-party if Plaintiff did not pay for the trailer.  [Compl. ¶ 13].  Plaintiff has therefore alleged sufficient facts to state a claim for damages under CUTSA at this pre-discovery stage of the litigation.

### 3.  Violation of CUTPA

CUTPA provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Conn. Gen. Stat. § 42-110(b).  "'Any person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of [an unfair or deceptive act or practice] may bring an action' to recover actual damages, punitive damages, and equitable relief." *Fabri v. United Tech. Int'l, Inc.*, 387 F.3d 109, 119 (2d Cir. 2004) (quoting Conn. Gen. Stat. § 42-110g(a)).  "To determine whether a business practice violates CUTPA, Connecticut courts follow the Federal Trade Commission's 'cigarette

rule[.]'" *Aztec Energy Partners, Inc. v. Sensor Switch, Inc.*, 531 F. Supp. 2d 226, 232 (D. Conn. 2007). This rule requires satisfaction of at least one of three factors:

> "(1) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers (or competitors or other businessmen).

*Fabri v. United Tech. Int'l, Inc.*, 387 F.3d 109, 119-20 (2d Cir. 2004); *see also Cheshire Mortgage Serv. Inc. v. Montes*, 223 Conn. 80, 106 (1992) ("All three criteria do not need to be satisfied to support a finding of unfairness.").

Facts establishing a breach of contract may or may not suffice to establish a CUTPA violation. *Hudson United Bank v. Cinnamon Ridge Corp.,* 81 Conn. App. 557, 571 (2004); *Lester v. Resort Camplands International, Inc.,* 27 Conn. App. 59, 71 (1992). In order for a breach of contract to rise to the level of a CUTPA violation, the manner in which the contract was breached must be sufficiently egregious to offend traditional notions of fairness or to violate public policy. *Boulevard Assocs. v. Sovereign Hotels, Inc.*, 72 F.3d 1029 (2d Cir. 1995); *City of Bridgeport v. Aerialscope, Inc.*, 122 F. Supp. 2d 275 (D. Conn. 2000). Plaintiff not only alleges that Defendant breached the contract by failing to deliver the prototype timely; it also alleges that Defendant threatened to misappropriate Plaintiff's intellectual property if Plaintiff did not accept delivery and pay for the trailer after Defendant breached the contract. The Complaint can be read to allege that Defendant engaged in extortionate behavior after the breach of contract; and thus to allege conduct separate and distinct from the breach of

contract.  Alternatively, the alleged extortionate behavior may be construed as aggravating conduct incident to the breach of contract.  In either case, Plaintiff has adequately alleged a CUTPA violation, and the motion to dismiss the CUTPA claim is DENIED.

### 4. Negligent Misrepresentation

"One who, in the course of his business, profession or employment . . . supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information."  *D'Ulisse-Cupo v. Board of Directors of Notre Dame High School*, 202 Conn. 206, 218 (1987) (quoting Restatement (Second) of Torts § 552 (1977)).  Plaintiff alleges that the Defendant "represented an ability to construct for the Plaintiff a prototype and future production based on the Plaintiff's specification" and "failed to produce a prototype in a reasonable time."  [Compl. ¶¶ 33, 35].  Plaintiff further alleges that it "revealed [its] trade secrets [i]n reliance on [the Defendant's] promise for performance as well as secrecy."  [Compl. ¶ 37].

In its opposition, the Plaintiff clarifies that the alleged misrepresentation was the Defendant's statement on November 10, 2015 that the Plaintiff's prototype was "next in line," when the prototype "was not, in fact, produced until late November or early December."  Dkt. No. 24 at 19].  The Plaintiff identifies no other representations regarding the time within which the Defendant allegedly promised to complete the prototype.  Absent any information regarding the speed

with which the Defendant can produce a trailer, the claim that the trailer was "next in line" and the prototype's completion a few weeks later could be consistent.  The Plaintiff has therefore failed to allege that this "next in line" statement was a misrepresentation.

Additionally, although the complaint alleges that the Defendant "made representations to the Plaintiff of intent to produce, protect, and hold exclusive the specifications," [Compl. ¶ 26], the Plaintiff's briefing makes no reference to this alleged representation and identifies no representations made by the Defendant regarding the ownership of the specification.  The Court must therefore conclude that the Plaintiff has abandoned allegations that the Defendant made misrepresentations regarding the ownership of the specification. Plaintiff's negligent misrepresentation claim must therefore be DISMISSED.

VI.    **Conclusion**

For the foregoing reasons, the Defendant's Motion to Dismiss, [Dkt. No. 16], is GRANTED IN PART and DENIED IN PART.  Count Four is DISMISSED.


IT IS SO ORDERED.


_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut:  August 30, 2017